Commonwealth ex rel. v. Tanner et al.

*Harry W. Lightstone*, for plaintiff.
*C. A. Whitehouse*, for defendants.

PAUL, J., November 9, 1942.—A bill in equity was filed by the plaintiff to set aside a conveyance on the theory that it was made in fraud of creditors. The bill alleges that on December 21, 1934, defendant Mary Jane Tanner made a written application to the Schuylkill County Mothers' Assistance Fund for old-age assistance payments. At that time she was the owner of a property in New Philadelphia known as 76 Valley Street and plaintiff paid the sum of $540 to her from November 1936 to June 1938, relying upon the repre-

sentations of defendant that she was the owner of the property above referred to. However, on August 29, 1936, defendant Mary Jane Tanner conveyed the above premises to defendant Elsie Pearl Kelly for the sum of $1, whereas a fair consideration would have been in excess of $1,000. Plaintiff avers that the conveyance was made for the purpose of rendering defendant Mary Jane Tanner insolvent.

Defendants filed five preliminary objections. The first one is as follows:

"1. As shown by the Bill, the plaintiff is proceeding under section 15 of the Old Age Assistance Law of June 25, 1936, P. L. 28, No. 13 and under section 4 of the Act of June 24, 1937, P. L. 2045, known as 'The Support Law.' This Act clearly defines the liability of the beneficiary to pay, the right of the public agency to sue for money expended and does not give the plaintiff any right to sue or maintain this Bill since the Acts relied upon by the plaintiff state:

" 'The real and personal property of any indigent person shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, *whether owned at the time such expenses were incurred or acquired thereafter.* Any public body or public agency may sue for moneys so expended, and any judgment obtained shall be a lien upon the real estate of such indigent person, and be collected as other judgments;'

"The Bill itself shows that the property was conveyed and recorded on August 29, 1936 and that no expenses were incurred until November 1936 or approximately three months after the absolute conveyance of the ownership of the property in question in fee simple to Elsie Pearl Kelly, and hence there is no liability placed upon this property by the above Acts." (Italics supplied.)

Defendants, not denying the transaction, contend that, since the conveyance was made about three months

before payments were made, plaintiff has no right to sue or maintain this bill because the act of assembly, under which she received the money, states that real estate owned at the time such expenses were incurred or acquired thereafter shall be liable for these expenses. All that may be true. Plaintiff, however, goes one step further and contends that were it not for the fraudulent transfer defendant Mary Jane Tanner would still be the owner of the property which would then be liable for the support she received. If plaintiff is able to show fraud in the transfer, then the conveyance could be set aside and the property would then be liable for the support paid.

The second objection is as follows:

"2. The plaintiff is guilty of laches in bringing the Bill in Equity in that no action was instituted by the plaintiff until July 29, 1941 whereas, the conveyance of the property was made on August 29, 1936 and recorded as a matter of public record in the office of the Recorder of Deeds in Schuylkill County on that date. All this to the prejudice of the rights of Elsie Pearl Kelly."

In determining a point of laches, the same yardstick is not used as a measuring rod when dealing with the Commonwealth as with an individual, especially in a case where the circumstances are such as they are in this case. In dealing with the question of laches the court always takes into consideration whether any rights have been affected by not proceeding promptly. Defendants allege that plaintiff is guilty of laches to the prejudice of the rights of Elsie Pearl Kelly. As far as the bill or the preliminary objections are concerned, there is nothing whatever to show that the rights of Elsie Pearl Kelly have been affected other than the fact that she received a property worth more than $1,000 for the sum of $1.

The third objection is as follows:

"3. That there is no averment by the plaintiff of any facts showing there was any fraud committed by either

Elsie Pearly Kelly or Mary Jane Tanner; nor that any fraud was committed upon the plaintiff."

This is not quite accurate because in the eighth, ninth, and tenth paragraphs it is alleged that defendant Mary Jane Tanner, by conveying the above-mentioned property to defendant Elsie Pearl Kelly, thereby rendered herself insolvent and that Elsie Pearl Kelly knew at the time that Mary Jane Tanner would be rendered insolvent and that Mary Jane Tanner made the conveyance for the purpose of rendering herself insolvent and thus to avoid liability for the repayment of the assistance.

The fourth objection is as follows:

"4. The Bill avers no competent, relevant or material fact, matter or thing which entitles the plaintiff to the remedies it prays, or any of them."

This objection is without merit because, if plaintiff proves the facts it alleges, then it would be entitled to the relief it seeks.

"Every conveyance made and every obligation incurred without fair consideration, when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors": Act of May 21, 1921, P. L. 1045, sec. 6.

The fifth objection is as follows:

"5. That the plaintiff has a full, complete and adequate remedy at law and the Court is without jurisdiction in equity on the facts pleaded."

This objection is without merit. In fact, if plaintiff does not get relief in equity, there is no relief possible. Defendants refer to none, either at the oral argument or in the brief.

And now, November 9, 1942, the preliminary objections are dismissed and defendants are given 30 days from this date to file an answer to the merits.